1  Soyeon Jeong (SBN: 325688)
   jeongs@gtlaw.com
2  **GREENBERG TRAURIG, LLP**
   Four Embarcadero Center, Suite 3000
3  San Francisco, California 94111
   T: 415.655.1260 F: 415.707.2010
4

   Benjamin Schladweiler (*pro hac vice* admission pending)
5  schladweilerb@gtlaw.com
   **GREENBERG TRAURIG, LLP**
6  The Nemours Building
   1007 North Orange Street, Suite 1200
7  Wilmington, DE 19801
   T: 302.661.7000 F: 302.661.7360
8

   Vivian Kuo (*pro hac vice* admission pending)
9  kuov@gtlaw.com
   **GREENBERG TRAURIG, LLP**
10 2021 L Street, N.W., Suite 1000
   Washington, DC 20037
11 T: 202.331.3158 F: 202.331.3101

12
   *Attorneys for Plaintiff Blue Jeans Network, Inc.*
13

14                     **UNITED STATES DISTRICT COURT**

15                     **NORTHERN DISTRICT OF CALIFORNIA**

16

17

18 | Blue Jeans Network, Inc.,        | CASE NO. _____       |
19 |         Plaintiff,                |                                        |
   |                                   | **COMPLAINT FOR DECLARATORY**          |
20 | v.                                | **JUDGMENT OF NON-INFRINGEMENT OF**    |
   |                                   | **U.S. PATENT NOS. 8,339,997; 9,094,525;** |
21 | Meetrix IP, LLC,                  | **9,253,332; and 9,843,612**           |
22 |         Defendant.                | **DEMAND FOR JURY TRIAL**              |

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT

Plaintiff Blue Jeans Network, Inc. ("BlueJeans") hereby brings this Complaint for declaratory judgment of non-infringement of U.S. Patent Nos. 8,339,997 ("the '997 patent"), 9,094,525 ("the '525 patent"), 9,253,332 ("the '332 patent"), and 9,843,612 ("the '612 patent") (collectively, the "Meetrix Patents") against Defendant Meetrix IP, LLC ("Meetrix") and states as follows:

## NATURE OF THE ACTION

1. This is an action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for a declaratory judgment of non-infringement of the Meetrix Patents and for such other relief as the Court deems just and proper. Specifically, BlueJeans seeks a declaratory judgment that it has not infringed, induced others to infringe, or contributed to the infringement by others, of the Meetrix Patents under 35 U.S.C. § 271 (or any subsection thereof).

2. True and correct copies of the Meetrix Patents are attached as Exhibits 1-4.

## THE PARTIES

3. Plaintiff BlueJeans is a wholly-owned subsidiary of Verizon Communications Inc. ("VCI") and a corporation organized and existing under the laws of Delaware, with its principal place of business at 3098 Olsen Dr., 2nd floor, San Jose, California 95128.

4. On information and belief, Defendant Meetrix is a limited liability company organized and existing under the laws of Texas, with its principal place of business at 12100 Wilshire Boulevard, Suite 127, San Jose, California 95118. On information and belief, Meetrix is a subsidiary of Anixa Biosciences, Inc., a publicly traded biotechnology company that is also headquartered in San Jose, California.

5. On information and belief, Meetrix is a patent monetization company that does not practice the alleged inventions claimed in the Meetrix Patents or make any products. Meetrix purports to be the assignee to the Meetrix Patents. The recorded patent assignment for the Meetrix Patents (Exhibit 6) identifies San Jose as Meetrix's base of operations for its patent monetization business.

## JURISDICTION

6. This declaratory judgment action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1-390, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331

and 1338(a).

8. An actual and justiciable controversy exists between BlueJeans and Meetrix. Specifically, Meetrix filed a complaint against BlueJeans's parent company, VCI, in the Western District of Texas styled as *Meetrix IP, LLC v. Verizon Communications, Inc.*, No. 6:21-cv-1289-ADA. *See* Exhibit 5. In that suit, Meetrix alleged that VCI infringed one or more claims of the '997, '525, '332, and '612 patents by making, selling, offering for sale, importing and distributing "BlueJeans by Verizon [Virtual] Meetings, Webinars/Events, Connected Rooms, and Telehealth" videoconferencing products. *Id.*, ¶¶ 33, 39, 45, 51. VCI moved to dismiss that action because it does not have any connection to Texas and it is a holding company that does not make, sell, offer for sale, import or distribute *any* products, including the BlueJeans products accused in that action. Those products are made and sold by Blue Jeans Network, Inc., the plaintiff in this action. Because a controversy exists over whether BlueJeans's products and services infringe the Meetrix Patents, the Court may grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9. This Court has personal jurisdiction over Meetrix by virtue of its systematic and continuous contacts with this Judicial District and the State of California. Meetrix has purposefully availed itself of the benefits and protections of the State of California by, *inter alia*, having its principal place of business and offices in this District, as evidenced by the recorded patent assignment of the Meetrix Patents (Exhibit 6) that identifies San Jose as Meetrix's base of operations for its patent monetization business.

10. Thus, it would be reasonable and fair for this Court to exercise jurisdiction over Meetrix consistent with the principles underlying the U.S. Constitution, and it would not offend traditional notions of fair play and substantial justice.

11. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because Meetrix is subject to personal jurisdiction in this District.

## INTRADISTRICT ASSIGNMENT

12. For purposes of intradistrict assignment under Civil Local Rules 3-2(c) and 3-5(b), this intellectual property action will be assigned on a District-wide basis.

## THE MEETRIX PATENTS

13. The '997 patent is titled "Media Based Collaboration Using Mixed-Mode PSTN and

Internet Networks." The '997 patent issued on December 25, 2012, and lists Thomas A. Dye and Thomas A. Dundon as inventors. Meetrix purports to be the assignee of the '997 patent. The '997 patent expired due to nonpayment of maintenance fees on December 25, 2020. A true and correct copy of the '997 patent is attached hereto as Exhibit 1.

14. The '525 patent is titled "Audio-Video Multi-Participant Conference Systems Using PSTN and Internet Networks." The '525 patent issued on July 28, 2015, and lists Thomas Dye and Thomas Dundon as inventors. Meetrix purports to be the assignee of the '525 patent. A true and correct copy of the '525 patent is attached hereto as Exhibit 2.

15. The '332 patent is titled "Voice Conference Call Using PSTN and Internet Networks." The '332 patent issued on February 2, 2016, and lists Thomas Dye and Thomas Dundon as inventors. Meetrix purports to be the assignee of the '332 patent. A true and correct copy of the '332 patent is attached hereto as Exhibit 3.

16. The '612 patent is titled "Voice Conference Call Using PSTN and Internet Networks." The '612 patent issued on December 12, 2017, and lists Thomas Dye and Thomas Dundon as inventors. Meetrix purports to be the assignee of the '612 patent. A true and correct copy of the '612 patent is attached hereto as Exhibit 4.

17. The '525, '332, and '612 patents are terminally disclaimed to the '997 patent.

**THE PARTIES' DISPUTE CONCERNING THE MEETRIX PATENTS**

18. On December 10, 2021, Meetrix filed suit against BlueJeans's parent company, VCI, accusing "BlueJeans by Verizon [Virtual] Meetings, Webinars/Events, Connected Rooms, and Telehealth" videoconferencing products of infringing one or more claims of the '997, '525, '332, and '612 patents. Ex. 5, ¶¶ 33, 39, 45, 51. These products are manufactured, sold and distributed by BlueJeans, not VCI.

19. Specifically, Meetrix alleges that BlueJeans products infringe at least claim 1 of the '332 patent, claim 1 of the '525 patent, and claim 1 of the '612 patent by allowing "a participant to participate (*e.g.* phone participant) and connect to an online meeting over a PSTN connection (*e.g.* 'land line,' cell phone, etc.)," the participant to "talk with a second participant (*e.g.* moderator or host) who may be connected using a different form of audio (and/or video) communication, such as VoIP or web conferencing communications," and "a third participant (*e.g.* remote user) to connect to the conference

over a private secure data network connection using a data network for audio/video communications and to share collaboration data (*e.g.* electronic presentation, electronic documents, etc.) with the other participants." Ex. 5, ¶ 20.

20. Similarly, Meetrix alleges that BlueJeans products infringe at least claim 1 of the '997 patent by allowing "several online participants to connect to a conference by sending a message (e.g., invitation) to a group of multicast appliances (e.g., remote computers)," and the "system is able to facilitate a telephonic participant who dials in." *Id*., ¶ 26.

21. The accused BlueJeans products and services do not infringe the Meetrix Patents.

22. For example, and without limitation, BlueJeans video conferencing services and products do not infringe, directly or indirectly, independent claim 1 of the '997 patent because, at a minimum, BlueJeans does not practice the following claim limitations:

    a. "sending a first message to each of a plurality of multicast appliances over the Internet, wherein the first message comprises a group address which identifies a plurality of participants;"

    b. "establishing a plurality of virtual private networks across the Internet routes between the multicast appliances;" and/or

    c. "the telephone participant joining the multi-participant video conference, wherein said joining comprises;"

        i. "the telephone participant calling into a gateway server;"

        ii. "the telephone participant providing conference ID information;"

        iii. "the telephone participant providing conference ID information;"

        iv. "the gateway server establishing communication with a conferencing server;"

        v. "authenticating the telephone participant;"

        vi. "transmitting multicast group information to the gateway server;" and/or

        vii. "wherein the gateway server is operable to use the multicast group information to enable the telephone participant to participate in the multi-participant video conference."

23. More specifically, without limitation, BlueJeans products (1) do not employ, incorporate,

or otherwise make use of "virtual private networks," (2) do not cause the "sending" or "receiving" of "a first message," (3) do not cause "the telephone participant" to perform any action, (4) do not employ, incorporate, or otherwise make use of a "gateway server" that operates as claimed, (5) do not employ, incorporate, or otherwise make use of "multicast appliances" that operate as claimed, and (6) do not perform the method in the order claimed.

24. Further, BlueJeans video conferencing services and products do not infringe, directly or indirectly, independent claims 3 and 11, nor any of the dependent claims, of the '997 patent.

25. BlueJeans video conferencing services and products also do not infringe, directly or indirectly, independent claim 1 of the '525 patent because, at a minimum, BlueJeans does not practice the following claim limitations:

    a. "a first mixer that mixes a Public Switched Telephone Network (PSTN) client audio data stream with a moderator audio-video data stream into a first mixed data stream;"

    b. "a first transport output that transmits the first mixed data stream to at least one remote client that receives the first mixed data stream, the least one remote client communicatively coupled to the Internet, which generates a remote client audio-video data stream;"

    c. "a second mixer that mixes the moderator audio-video data stream with the remote client audio-video data stream into a second mixed data stream;" and/or

    d. "a second transport output that transmits a mixed audio data stream, corresponding to the second mixed data stream, to the PSTN client."

26. More specifically, without limitation, BlueJeans products (1) do not employ, incorporate, or otherwise make use of "a first mixer" that operates as claimed, (2) do not employ, incorporate, or otherwise make use of "a first transport output" as claimed, (3) do not employ, incorporate, or otherwise make use of any "data stream" as claimed, (4) do not employ, incorporate, or otherwise make use of "a second mixer" that operates as claimed, (5) do not employ, incorporate, or otherwise make use of "a second transport output" as claimed, and (6) do not operate to perform the steps in the order claimed.

27. Further, BlueJeans video conferencing services and products do not infringe, directly or indirectly, independent claims 9 and 17, nor any of the dependent claims, of the '525 patent.

28. BlueJeans video conferencing services and products also do not infringe, directly or indirectly, independent claim 1 of the '332 patent because, at a minimum, BlueJeans does not practice the following claim limitations:

    a. "receiving first audio data from a Public Switched Telephone Network (PSTN) client;"

    b. "receiving second audio data from a moderator;"

    c. "receiving third audio data, video data, and collaboration data from at least one remote client through a first Virtual Private Network (VPN) tunnel;"

    d. "mixing the first data from the PSTN client with the second audio data from the moderator into a first mixed audio data;"

    e. "transmitting the first mixed audio data to the remote client through the first Virtual Private Network (VPN) tunnel;"

    f. "mixing the second audio data from the moderator with the third audio data from the remote client into a second mixed audio data;" and/or

    g. "transmitting the second mixed audio data to the PSTN client."

29. More specifically, without limitation, BlueJeans products (1) do not employ, incorporate, or otherwise make use of "virtual private networks" or "virtual private network tunnels," (2) do not employ, incorporate, or otherwise make use of "moderators" as claimed, (3) do not cause the "mixing" of data as claimed, (4) do not cause the "transmitting" of data as claimed, (5) do not employ, incorporate, or otherwise make use of "collaboration data" as claimed, and (6) do not perform the method in the order claimed.

30. Further, BlueJeans video conferencing services and products do not infringe, directly or indirectly, independent claim 8, nor any of the dependent claims, of the '332 patent.

31. BlueJeans video conferencing services and products also do not infringe, directly or indirectly, claim 1 of the '612 patent because, at a minimum, BlueJeans does not practice the following claim limitations:

    a. "initiating a dial-out process to establish a connection with a Public Switch Telephone Network (PSTN) client in response to a local moderator client selecting the PSTN client;"

  b. "receiving first audio at the local moderator client from the PSTN client through a PSTN gateway;"

  c. "receiving second audio data at the local moderator client from a remote client through a Virtual Private Network (VPN) tunnel;"

  d. "transmitting third audio data, first video data, and first collaboration data from the local moderator client to the remote client through the first VPN tunnel;" and/or

  e. "transmitting fourth audio data from the local moderator client to the PSTN client through the PSTN gateway."

32. More specifically, without limitation, BlueJeans products (1) do not employ, incorporate, or otherwise make use of "virtual private networks" or "virtual private network tunnels," (2) do not employ, incorporate, or otherwise make use of "moderators" as claimed, (3) do not cause the "transmitting" of data as claimed, (4) do not employ, incorporate, or otherwise make use of a "PSTN gateway" that operates as claimed, (5) do not employ, incorporate, or otherwise make use of "collaboration data" as claimed, and (6) do not perform the method in the order claimed.

33. Further, BlueJeans video conferencing services and products do not infringe, directly or indirectly, independent claims 10, 19 and 25, nor any of the dependent claims, of the '612 patent.

34. VCI has moved to dismiss Meetrix's complaint in the Western District of Texas because VCI has no connections with the State of Texas and because it does not make, sell or distribute any products, including the BlueJeans products accused in that action. That motion is currently pending.

35. Based on the above-described actions, there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Accordingly, as further described herein, an actual and justiciable controversy exists between BlueJeans and Meetrix as to the non-infringement of the Meetrix Patents.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment of Non-Infringement of the '997 Patent)**

36. BlueJeans restates and realleges each of the assertions set forth in the paragraphs above.

37. BlueJeans has not infringed and does not infringe any claim of the '997 patent directly or indirectly, either literally or under the doctrine of equivalents.

38. BlueJeans did not have knowledge of the '997 patent prior to Meetrix filing suit against VCI on December 10, 2021.

39. BlueJeans never had any intent to cause the end users of its services or anyone else to infringe the '997 patent.

40. BlueJeans products have substantial non-infringing uses and are not specifically made or adapted for infringement of the '997 patent.

41. There is an actual and justiciable controversy between BlueJeans and Meetrix concerning the non-infringement of the '997 patent. BlueJeans is therefore entitled to a declaratory judgment that its products and services do not directly or indirectly infringe the '997 patent, either literally or under the doctrine of equivalents.

## SECOND CLAIM FOR RELIEF

**(Declaratory Judgment of Non-Infringement of the '525 Patent)**

42. BlueJeans restates and realleges each of the assertions set forth in the paragraphs above.

43. BlueJeans has not infringed and does not infringe any claim of the '525 patent directly or indirectly, either literally or under the doctrine of equivalents.

44. BlueJeans did not have knowledge of the '525 patent prior to Meetrix filing suit against VCI on December 10, 2021.

45. BlueJeans has never had any intent to cause the end users of its services or anyone else to infringe the '525 patent.

46. BlueJeans products have substantial non-infringing uses and are not specifically made or adapted for infringement of the '525 patent.

47. There is an actual and justiciable controversy between BlueJeans and Meetrix concerning the non-infringement of the '525 patent. BlueJeans is therefore entitled to a declaratory judgment that its products and services do not directly or indirectly infringe the '525 patent, either literally or under the doctrine of equivalents.

## THIRD CLAIM FOR RELIEF

**(Declaratory Judgment of Non-Infringement of the '332 Patent)**

48. BlueJeans restates and realleges each of the assertions set forth in the paragraphs above.

49. BlueJeans has not infringed and does not infringe any claim of the '332 patent directly or indirectly, either literally or under the doctrine of equivalents.

50. BlueJeans did not have knowledge of the '332 patent prior to Meetrix filing suit against VCI on December 10, 2021.

51. BlueJeans has never had any intent to cause the end users of its services or anyone else to infringe the '332 patent.

52. BlueJeans products have substantial non-infringing uses and are not specifically made or adapted for infringement of the '332 patent.

53. There is an actual and justiciable controversy between BlueJeans and Meetrix concerning the non-infringement of the '332 patent. BlueJeans is therefore entitled to a declaratory judgment that its products and services do not directly or indirectly infringe the '332 patent, either literally or under the doctrine of equivalents.

## FOURTH CLAIM FOR RELIEF

**(Declaratory Judgment of Non-Infringement of the '612 Patent)**

54. BlueJeans restates and realleges each of the assertions set forth in the paragraphs above.

55. BlueJeans has not infringed and does not infringe any claim of the '612 patent directly or indirectly, either literally or under the doctrine of equivalents.

56. BlueJeans did not have knowledge of the '612 patent prior to Meetrix filing suit against VCI on December 10, 2021.

57. BlueJeans has never had any intent to cause the end users of its service or anyone else to infringe the '612 patent.

58. BlueJeans products have substantial non-infringing uses and are not specifically made or adapted for infringement of the '612 patent.

There is an actual and justiciable controversy between BlueJeans and Meetrix concerning the non-infringement of the '612 patent. BlueJeans is therefore entitled to a declaratory judgment that its products and services do not directly or indirectly infringe the '612 patent, either literally or under the doctrine of equivalents.

**PRAYER FOR RELIEF**

WHEREFORE, BlueJeans respectfully request the following relief:

A. That the Court enter a judgment declaring that BlueJeans has not infringed and does not infringe any claim of the '997 patent, directly or indirectly, either literally or under the doctrine of equivalents;

B. That the Court enter a judgment declaring that BlueJeans has not infringed and does not infringe any claim of the '525 patent, directly or indirectly, either literally or under the doctrine of equivalents;

C. That the Court enter a judgment declaring that BlueJeans has not infringed and does not infringe any claim of the '332 patent, directly or indirectly, either literally or under the doctrine of equivalents;

D. That the Court enter a judgment declaring that BlueJeans has not infringed and does not infringe any claim of the '612 patent, directly or indirectly, either literally or under the doctrine of equivalents;

E. That the Court enter a judgment that this is an exceptional case under 35 U.S.C. § 285 and award BlueJeans its costs, expenses, and reasonable attorneys' fees incurred in this action;

F. That the Court award BlueJeans any and all other relief to which BlueJeans may show themselves to be entitled; and

G. That the Court award BlueJeans any other relief it may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and Civil Local Rule 3-6, BlueJeans demands a trial by jury on all issues and claims so triable.

| | |
|---|---|
| 1 | |
| 2 | DATED: February 21, 2022 |

DATED: February 21, 2022                     **GREENBERG TRAURIG, LLP**

By: _/s/ Soyeon Jeong_

Soyeon Jeong (SBN: 325688)
jeongs@gtlaw.com
**GREENBERG TRAURIG, LLP**
Four Embarcadero Center, Suite 3000
San Francisco, California 94111
Telephone: 415.655.1300
Facsimile: 415.520.5609

Benjamin Schladweiler (*pro hac vice* admission pending)
schladweilerb@gtlaw.com
**GREENBERG TRAURIG, LLP**
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
T: 302.661.7000 F: 302.661.7360

Vivian Kuo (*pro hac vice* admission pending)
kuov@gtlaw.com
**GREENBERG TRAURIG, LLP**
2021 L Street, N.W., Suite 1000
Washington, DC 20037
T: 202.331.3158 F: 202.331.3101

*Attorneys for Plaintiff Blue Jeans Network, Inc.*